JANICE MCCARTHY *v.* HARTFORD HOSPITAL ET AL.
(AC 28666)

Bishop, McLachlan and Harper, Js.

Argued March 25—officially released June 10, 2008

*Douglas L. Drayton*, for the appellants (defendants).

*John J. Quinn*, for the appellee (plaintiff).

*Opinion*

PER CURIAM. The defendant Hartford Hospital[1] appeals from the decision of the workers' compensation review board (board) affirming the finding and award of the workers' compensation commissioner (commissioner) in favor of the plaintiff, Janice McCarthy. On appeal, the defendant claims that the board improperly awarded supplemental benefits pursuant to General Statutes § 31-308a[2] in the absence of medical and factual

_____

[1] In addition to Hartford Hospital, Constitution State Service Company, its workers' compensation insurer, also is a defendant. For convenience, we refer in this opinion to Hartford Hospital as the defendant.

[2] General Statutes § 31-308a provides: "(a) In addition to the compensation benefits provided by section 31-308 for specific loss of a member or use of the function of a member of the body, or any personal injury covered by this chapter, the commissioner, after such payments provided by said section 31-308 have been paid for the period set forth in said section, may award additional compensation benefits for such partial permanent disability equal to seventy-five per cent of the difference between the wages currently earned by an employee in a position comparable to the position held by such injured employee prior to his injury, after such wages have been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act in accordance with section 31-310, and the weekly amount which such employee will probably be able to earn thereafter, after such amount has been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act in accordance with section 31-310, to be determined by the commissioner based upon the nature and extent of the injury, the training, education and experience of the employee, the availability of work for persons with such physical condition and at the employee's age, but not more than one hundred per cent, raised to the next even dollar, of the average weekly earnings of production and related workers in manufacturing in the state, as determined in accordance with the provisions of section 31-309. If evidence of exact loss of earnings is not available, such loss may be computed from the proportionate loss of physical ability or earning power caused by the injury. The duration of such additional compensation shall be determined upon a similar basis by the commissioner, but in no event shall the duration of such additional compensation exceed the lesser of (1) the duration of the employee's permanent partial disability benefits, or (2) five hundred twenty weeks. Additional benefits provided under this section shall be available only to employees who are willing and able to perform work in this state.

evidence that the plaintiff's injury caused a diminution of her earning capacity. We affirm the decision of the board.

The following procedural and factual history is relevant to the defendant's appeal. On April 1, 1999, while the plaintiff was an employee of the defendant, she fell and sustained injuries while at work. These injuries left her with a 15 percent permanent partial disability of her left foot and a 14 percent permanent partial disability of her left hand, for which she received benefits. At the time she sustained her injuries, the plaintiff was earning $671.31 per week. Due to the lingering effects of her injuries, the plaintiff retired effective July 1, 2003.

After retiring, the plaintiff trained her replacement, working nineteen hours per week and earning $365.79 per week. The training program ended in September, 2003. The plaintiff did not work during the month of October, 2003, but resumed work on November 1, 2003, and worked through May, 2004, at an average weekly wage of $266 per week.

The plaintiff sought benefits pursuant to § 31-308a for the period of July 2, 2003, through April 9, 2004. The defendant opposed her request, contending that there was a significant lapse of time between the plaintiff's retirement and when she began seeking full-time employment again, and that she did not introduce any medical evidence of physical restrictions caused by her permanent injuries. The commissioner concluded that benefits should be paid from July 2 to September 30, 2003, at a weekly rate of $117.93, and from November 1, 2003, through the expiration of the remaining 40.45 weeks of her statutory eligibility at a rate of $231.88 per

"(b) Notwithstanding the provisions of subsection (a) of this section, additional benefits provided under this section shall be available only when the nature of the injury and its effect on the earning capacity of an employee warrant additional compensation."

week. The commissioner denied benefits for October, 2003, because the plaintiff did not seek work during that time. The defendant appealed from that decision to the board.

In affirming the commissioner's decision, the board found the following additional facts, which are supported by the plaintiff's testimony at the hearing before the commissioner. At the time of her fall, the plaintiff's job required her to work on bulk mailings, answer many telephone calls and do a significant amount of typing. Following her fall, the plaintiff was advised by her physician to restrict repetitive motions. She had surgery on her foot in the fall of 1999 and a joint replacement on her left thumb in the spring of 2001. Following the surgery on her hand, the plaintiff experienced severe pain when she tried to lift and grasp objects. Consequently, in the fall of 2001, the plaintiff switched jobs, hoping a new job would put less strain on her hand and foot. She was promoted to office manager, a position that required her to set up and break down charts for newly admitted patients. The new building in which she worked did not have an elevator, and her duties required her to travel among three stories, which was difficult. She also had difficulty lifting the charts, handling files and notebooks, removing staples, opening doors, fastening packages with binder clips and unsnapping three ring binders. The plaintiff also required a headset for telephone conversations because her hand would shake when she held the receiver to her ear.

The plaintiff received positive performance appraisals and, consequently, received annual raises. Because her duties caused her physical pain and discomfort, however, and she feared that her job performance would suffer if she continued working, she decided to retire as of July 1, 2003, even though her retirement

benefits were reduced by about 40 percent due to her early retirement.

After retiring, the plaintiff trained her replacement, working nineteen hours per week, which was the limit she was allowed to work following her retirement. She earned $365.79 per week, which represented an hourly rate greater than what she was earning when she sustained her injuries. In September, 2003, the training program ended. The plaintiff took the month of October, 2003, off, awaiting the return of another hospital employee whom she would be assisting in a new role on a per diem basis. In that position, in which she also worked nineteen hours per week, the plaintiff received lesser compensation of $14 per hour, or $266 per week. The plaintiff discovered that this position required much more work than she had expected, and she experienced physical difficulties due to her hand. In April or May, 2004, the plaintiff learned that her coworker was pregnant, and, therefore, the plaintiff's responsibilities would be increased. As a result, the plaintiff left that position.

Because the hospital did not have any other per diem positions available, the plaintiff sought employment elsewhere. She was eventually hired by the town of Wethersfield for a nineteen hour per week position that paid $15 per hour. That position, however, required more physical exertion than the plaintiff had anticipated, and, consequently, she lasted only one-half day. The plaintiff then took a position at Financial Careers, Inc., working twelve hours per week at a rate of $10 per hour. She tried to find supplemental employment during that time but was unsuccessful. She worked there until May, 2005, when she was laid off. The plaintiff then found another job as a receptionist, earning $13 per hour and approximately $500 per week. At the time of the hearing before the commissioner, the plaintiff was still experiencing pain in her left hand and

tenderness in her left ankle, but she thought she would be able to continue working in her current position as long as she used a telephone headset. In its decision, the board rejected the defendant's claim that § 31-308a requires a specific medical assessment to demonstrate that an individual with a documented permanent partial disability has a reduced earning capacity and concluded that there was sufficient evidence to support the plaintiff's claim that her injuries caused a diminution of her earning capacity. The board affirmed the commissioner's award and this appeal followed.

The standard of review in workers' compensation appeals is well settled. "[W]hen a decision of a commissioner is appealed to the review [board], the review [board] is obligated to hear the appeal on the record of the hearing before the commissioner and not to retry the facts. . . . It is the power and the duty of the commissioner, as the trier of fact, to determine the facts. . . . [T]he commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses. . . . The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . We will not change the finding of the commissioner unless the record discloses that the finding includes facts found without evidence or fails to include material facts which are admitted or undisputed. . . . Similarly, [t]he decision of the [board] must be correct in law, and it must not include facts found without evidence or fail to include material facts which are admitted or undisputed." (Internal quotation marks omitted.) *Samaoya* v. *Gallagher*, 102 Conn. App. 670, 673–74, 926 A.2d 1052 (2007).

Once a specific indemnity award has been exhausted, § 31-308a permits the commissioner to award benefits to a claimant whose earning capacity has been affected

adversely by a work-related injury. "In determining the duration and amount of such award, the commissioner is required to consider the nature and extent of the injury, the training, education and experience of the employee [and] the availability of work for persons with such physical condition and at the employee's age . . . ." (Internal quotation marks omitted.) *Bowman* v. *Jack's Auto Sales*, 54 Conn. App. 289, 295, 734 A.2d 1036 (1999).

The defendant's claim that the plaintiff was required to present medical testimony that her injuries affected her earning capacity in order to receive benefits under § 31-308a is not supported by the statute or decisional law. Because the plaintiff had received permanent partial disability ratings from a medical professional prior to seeking benefits under § 31-308a, the permanent value of her disability had already been established, and her claim that the injuries she sustained affected her earning capacity was amply supported by the evidence presented to and credited by the commissioner. Accordingly, the board properly affirmed the commissioner's award.

The decision of the workers' compensation review board is affirmed.